# DIRIENZO MECHANICAL CONTRACTORS, INC. *v.* SALCE CONTRACTING ASSOCIATES, INC., ET AL.
## (AC 29960)

Bishop, Gruendel and Beach, Js.

Argued January 21—officially released June 29, 2010

*Paul A. Sobel*, with whom was *Matthew M. Horowitz*, for the appellants (defendants).

*Katherine L. Matthews*, with whom, on the brief, was *R. Bradley Wolfe*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendants, Salce Contracting Associates, Inc. (Salce), and its surety, United States

Fidelity & Guaranty Company (surety), appeal from the judgment of the trial court rendered in favor of the plaintiff, DiRienzo Mechanical Contractors, Inc. (DiRienzo). On appeal, the defendants claim that the court erred in (1) failing to apply certain provisions of the contract, (2) finding that (a) DiRienzo was due $60,500 in retainage and (b) DiRienzo was due $68,228.80 for its change order concerning duct work and piping for the air conditioning system and (3) making certain findings concerning the installation of air conditioning units, namely, (a) finding Salce responsible for one half of the problems resulting from the installation of those units, (b) awarding DiRienzo $25,630.72 for the purchase of additional materials and labor to complete the installation of those units and (c) failing to award Salce any of the $125,737 it sought for delay costs it allegedly incurred due to DiRienzo's improper installation of those units. We affirm in part and reverse in part the judgment of the trial court.

The following facts are necessary to our resolution of the defendants' appeal. DiRienzo and Salce entered into a contract, dated February 11, 2004. DiRienzo assumed the role of subcontractor and Salce of general contractor for the construction of a private commercial project consisting of thirty beachside condominium units in West Haven, to be known as Oceanside Condominiums. The contract, which was drafted by Salce, provided that DiRienzo was to perform the plumbing, heating, air conditioning and fire protection work. DiRienzo was to receive $605,000 for its work. The contract set July 15, 2003, as the date that work was to commence and September 15, 2004, as the date upon which the project was to be substantially completed.

On April 4, 2005, DiRienzo submitted to Salce a final payment application in which it stated that its work was 100 percent complete, and in which it claimed an unpaid balance of $94,081. When Salce refused to pay,

DiRienzo filed a four count amended complaint against Salce and the surety. The complaint included claims against Salce for breach of contract, unjust enrichment and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The complaint also included a payment bond claim against the surety in which DiRienzo sought compensation for additional change orders, none of which appeared on the final payment application in which DiRienzo claimed its work was 100 percent complete. Salce and the surety raised special defenses alleging (1) the existence of a contractual limitations of action provision in the contract, (2) that DiRienzo had failed to perform as required by the contract and (3) that DiRienzo's deficient performance resulted in a loss to Salce. In addition, Salce filed a counterclaim for damage it alleged to have incurred as a result of DiRienzo's failure to perform. The court ruled in favor of DiRienzo for Salce's breach of contract and on the payment bond claim against the surety, and ruled against DiRienzo on its other claims. The court further ruled in favor of Salce on its counterclaim in the amount of $50,187.33 and credited it with that amount when awarding DiRienzo $454,631.67. Thereafter, the court acknowledged mathematical errors in the amount awarded to DiRienzo and modified that amount to $408,584.11.[1] From that judgment, the defendants appeal.

I

The defendants first claim that the court erred in failing to apply certain provisions of the contract. Specifically, they contend that the court failed to apply (1) paragraph 40, a contractual statute of limitations

---

[1] The amount awarded to the plaintiff from the jointly liable defendants consisted of valid change orders less valid charge backs, and retention of recovery on which interest would run at 6 percent per annum from November 7, 2005, until payment in full of the amount the court awarded, together with the costs of suit per statute.

provision, (2) paragraph 14, limiting subcontractor compensation for change order prices not agreed to in advance to DiRienzo's actual cost plus 10 percent for profit and overhead combined, and (3) paragraphs 1, 5 and 43, each providing that DiRienzo be responsible for both the design and construction of the systems it was to install. We address each claim in turn.

## A

The defendants first argue that the court failed to apply paragraph 40 of the contract. We disagree.

The following facts are relevant to our discussion. At trial, the defendants referred to paragraph 40 to raise as a special defense "contractual statute of limitations." Paragraph 40 provides: "In the event Subcontractor desires to give any Notice of Claim to Contractor, the Notice of Claim must be given sooner than five business days before Contractor is required to make any 'Pass Through Claim' under the General Contract. A 'Pass Through Claim' for the purposes of the preceding sentence is defined as a claim made or which may be made by Contractor under the General by which Contractor may pass through to Owner all or any part of the claim of Subcontractor such that any additional compensation or damages sought by Subcontractor from Contractor may be procured all or in part by Contractor from Owner. Notwithstanding any longer limitation period which may exist in the General Contract for Pass Through Claim, no Notice of Claim by Subcontractor against Contractor shall be valid unless it is given within 60 days after the occurrence of the event giving rise to the Notice of Claim. Subcontractor shall not be entitled to any relief or maintain any claim or cause of action against Contractor without first giving Contractor a Notice of Claim in accordance with the provisions of this Subcontract, and no Notice of Claim shall be valid unless given in accordance with this subcontract."

The court ruled against the defendants on this special defense. It stated: "The first special defense . . . entitled 'contractual statute of limitations,' argues that paragraph 40 of the contract . . . provides for an outside limit of sixty days from the time the event occurs that gives rise to the claim, within which the subcontractor [must] present a claim to the general contractor. The court finds that said limitation period of sixty days for notice does not apply to any payment due DiRienzo from Salce for any work requested or authorized by Salce. As to such work, Salce would have, of necessity, had notice. Similarly, any such work, if not required by the contract and performed by [DiRienzo] after consultation with [Salce] and permission to proceed, would not require subsequent notice other than billing in order for [DiRienzo] to be entitled to seek payment. Any defense available to [Salce] would be limited to proof that [DiRienzo] negligently performed the work in question and therefore was not entitled to payment." (Citation omitted.)

On appeal, the defendants assert that the court erred in failing to apply paragraph 40, thereby denying them an opportunity to assess potential liability, investigate whether certain work was truly beyond the scope of the contract and, if beyond the scope of the contract, decide whether to proceed with such work. The defendants first contend that the court improperly concluded that they had waived the notice requirement under paragraph 40. Specifically, they aver that because waiver is a defense that must be pleaded and DiRienzo failed to plead waiver, the court erred in charging Salce with having waived paragraph 40. See *Jo-Ann Stores, Inc. v. Property Operating Co., LLC*, 91 Conn. App. 179, 198, 880 A.2d 945 (2005) (waiver as special defense must be specifically pleaded). The defendants also contend that the court misinterpreted paragraph 40. Specifically, they posit that requesting that work be done is

a separate matter from whether the work is covered under the fixed price contract. We are not persuaded.

We first address the defendants' contention that the court improperly concluded that the defendants' knowledge of work being performed was sufficient to constitute a waiver of the notice requirement under paragraph 40. Preliminarily, we consider whether there is an adequate record for review. After carefully examining the court's memorandum of decision, we are unable to conclude that it made any finding as to whether the defendants waived the notice requirement under paragraph 40. As a general matter, it is incumbent on the appellant to provide an adequate record for review. See Practice Book § 61-10; *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999). "To the extent that the court's decision is ambiguous . . . it was [the appellant's] responsibility to seek to have it clarified." *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 534, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). "[W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Nicefaro* v. *New Haven*, 116 Conn. App. 610, 617, 976 A.2d 75, cert. denied, 293 Conn. 937, 981 A.2d 1079 (2009). The defendants did not seek an articulation, as permitted by Practice Book § 66-5. Nor did they seek clarification of this matter in their motion to reargue, filed January 2, 2008.[2]

---

[2] At trial, the defendants objected to Mario DiRienzo, chief executive officer of DiRienzo, testifying as to estimated costs of change orders, as opposed to actual costs. Their counsel stated: "I don't think that Mr. DiRienzo should be allowed to testify to things that are outside the scope of the complaint or based upon an expert's personal estimation of what the value is." He again objected: "And the second ground of my objection is the evidence of an expert opinion on how much any of the items is worth because there is nothing that was actually bought or done. They are estimates. There has been no disclosure of expert by the plaintiff as to the value based upon the estimates." The court overruled those objections.

Accordingly, we are unable to review the defendants' claim concerning waiver because the record is inadequate.

We next consider the defendants' contention that the court misinterpreted paragraph 40 by failing to distinguish between requesting that work be done and whether the work is covered under the contract. Initially, we set forth our standard of review. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). Here, there is definitive contract language. Accordingly, our review is plenary.

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO,* 288 Conn. 223, 231, 951 A.2d 1249 (2008). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357, 727 A.2d 1260 (1999). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Wolosoff* v. *Wolosoff*, 91 Conn. App. 374, 381, 880

A.2d 977 (2005). When construing the contract, we are mindful that "[t]he contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC,* 273 Conn. 724, 735, 873 A.2d 898 (2005).

It is undisputed that the contract clearly recognizes the possibility of work being performed outside of its scope. Paragraph 14 provides in relevant part: "It is acknowledged that the Owner and/or Contractor may require changes in Subcontractor's work . . . ." Paragraph 40 unambiguously sets forth notice of claim requirements for change orders. It provides in part: "[N]o Notice of Claim [for change order] by Subcontractor against Contractor shall be valid unless it is given within 60 days after the occurrence of the event giving rise to the Notice of Claim." It also is undisputed that Salce drafted the contract. Salce, therefore, reasonably should have known what work was and was not included as part of the contract.

Furthermore, in ruling that DiRienzo was to be compensated for certain change orders, the court stated: "[A]ny such work, if not required by the contract and performed by [DiRienzo] after consultation with [Salce] and permission to proceed, would not require subsequent notice other than billing in order for [DiRienzo] to be entitled to seek payment." Implicit in that statement is the court's finding that change orders for which it awarded compensation to DiRienzo were (1) not required by the contract, (2) the subject of discussion between DiRienzo and Salce and (3) permitted by Salce. We agree with the court that Salce would have had notice of a claim upon receipt of the bill from DiRienzo for work that Salce knew to be outside the scope of

the contract and for which Salce granted DiRienzo permission to proceed.

## B

The defendants also argue that the court failed to apply paragraph 14 of the contract. We disagree.

The following additional facts are relevant to our discussion. Paragraph 14, entitled "Contractor May Require Changes in Subcontractor's Work," provides in relevant part: "It is acknowledged that the Owner and/or Contractor may require changes in Subcontractor's Work . . . . It is agreed that the price from Subcontractor to Contractor shall not exceed Subcontractor's actual costs for labor and materials plus overhead and profit in the amount set forth in the General Contract, and if there is no amount set forth in the General Contract, then Subcontractor's overhead and profit shall be allowed in the total amount of 10% of Subcontractor's actual costs. . . . In the event Contractor and Subcontractor are unable to agree in advance on any terms of a change, Contractor may order the Subcontractor to perform the change, with the cost to be based on the method for calculating the cost of additions and deletions set forth in this paragraph above, and with a reasonable adjustment to be made to Substantial Completion Date for Subcontractor's Work, based upon the nature of the change. In the event Subcontractor is hired to perform any Subcontractor's Work on a cost of labor and/or materials plus overhead/profit basis . . . Subcontractor shall submit field tickets to Contractor's superintendent or project manager. The field tickets shall be prepared by Subcontractor and itemize the labor and materials performed and incorporated in Subcontractor's Work during the course of each day that labor has been performed and/or materials incorporated."

On appeal, the defendants argue that the court failed to apply paragraph 14 of the contract. They first contend that in finding compensation due DiRienzo, the court relied on testimony of "estimated" cost, as opposed to "actual" cost required by paragraph 14. They further note that DiRienzo failed to submit field tickets in accordance with paragraph 14. The defendants also contend that the court awarded overhead, profit and sales tax in a manner inconsistent with paragraph 14. Specifically, they aver that in response to the court's award for overhead, profit and sales tax, DiRienzo conceded that the court erred in marking up its costs by an additional 10 percent.[3]

We are unable to review the defendants' claim that the court failed to apply paragraph 14 requiring change order costs to be based on actual costs due to an inadequate record. "It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . . Without the necessary factual and legal conclusions . . . any decision made by us respecting [the appellants' claims] would be entirely speculative." (Internal quotation marks omitted.) *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 71–72, 924 A.2d 160 (2007). "To the extent that the court's decision is ambiguous . . . it was [the appellants'] responsibility to seek to have it clarified." *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, supra, 113 Conn. App. 534. Absent an articulation, we assume that the court acted properly. See *Nicefaro* v. *New Haven*, supra, 116 Conn.

---

[3] In response to the defendants' motion to reargue, DiRienzo conceded that the court improperly had marked up its costs by an additional 10 percent and that sales tax should not have been assessed against labor.

App. 617. Nowhere in the court's memorandum of decision did the court expressly find that the cost for a change order was based on either actual cost or estimated cost. Rather, the court repeatedly found several of DiRienzo's change order costs to be "fair and reasonable . . . ." Nor did the court express any finding as to whether DiRienzo submitted field tickets to Salce for change order work. Although the defendants objected to the testimony of Mario DiRienzo, chief executive officer of DiRienzo, on the ground that he was testifying as to estimated costs for change orders, as opposed to actual cost, they failed to seek an articulation on both that matter and the court's finding with regard to field tickets. It also is notable that the defendants failed to address in their motion to reargue[4] whether the record was adequate for reviewing the matters on which they now complain. We, therefore, are unable to review the defendants' claim because they have provided an inadequate record.

We also are unable to review the defendants' claim concerning overhead, profit and sales tax due to an inadequate record. Although the court granted the defendants' motion to reargue insofar as necessary to correct mathematical errors, nowhere in the court's corrected memorandum of decision, filed May 6, 2008, does the court ever address overhead, profit or sales tax. More significantly, although the defendants raised the issue of overhead, profit and sales tax in their motion to reargue, they failed to request an articulation on such following the court's issuance of its memorandum of decision and, thus, have not satisfied their burden of providing an adequate record for review. See *Boczer* v. *Sella*, 113 Conn. App. 339, 346, 966 A.2d 326 (2009). Accordingly, we decline to review this claim.

---

[4] In their motion to reargue, the defendants asserted that there were mathematical errors in the court's decision and that the court failed to address certain aspects of the contract. The court granted the motion only insofar as the correction of any mathematical errors.

C

The defendants finally argue that the court failed to apply paragraphs 1, 5 and 43 of the contract. We disagree.

The following additional facts are relevant to our discussion. Paragraph 1 provides in relevant part: "Subcontractor is being hired by Contractor to perform work ('Subcontractor's Work') as part of a project (the 'Project') being undertaken by Contractor. 'Subcontractor's Work' is defined as follows:

"Provide all necessary and required Labor, Material, Equipment and other Facilities proper to, or incidental to the Design and Build of all Fire Protection, Plumbing, Heating Ventilating and Air Conditioning Systems with the Associated and Related Firestopping & Access Panels for the Construction of Oceanside Condominiums . . . ."

Paragraph 5 provides in relevant part: "Contractor shall pay Subcontractor the Subcontract Price, which is: $(605,000.00)." It also provides: "Exclusions include: painting, patching, drilling, cutting, excavation, backfill, concrete, asbestos removal, and temperature control wiring, and all work related to the pool; also excluded are all temporary electric, temporary heat, temporary cooling, temporary ventilation, and temporary plumbing."

Paragraph 43 provides in relevant part: "Design Build Services Provided By The Subcontractor. The project consists of the total design by the Subcontractor for all work to be performed by the Subcontractor all as stipulated and described in this agreement and construction for which the Contractor is responsible under a separate agreement with the Owner."

The defendants contend that paragraphs 1, 5 and 43 make clear that the contract was a design and build

contract, pursuant to which DiRienzo was to be responsible for all design related defects. Because the costs for repair were DiRienzo's responsibility, the defendants argue that such costs cannot form the basis for change orders. Therefore, they argue that the court improperly awarded DiRienzo compensation for work that was DiRienzo's responsibility all along. Such work, the defendants assert, included installing sprinkler heads on balconies, hooking up dishwashers, installing gas pressure regulators, replacing elevator shaft vent parts, raising sprinkler heads in second and third floor units, raising water and vent lines in second and third floor units, replacing duct work in all units; redoing floor openings and piping for toilets, installing outside water faucets and reinstalling certain parts of the air conditioning units.

Initially, we set forth our standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . As a reviewing court [w]e must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, 120 Conn. App. 150, 158–59, 991 A.2d 650 (2010).

On our review of the record, we conclude that there is ample evidence to support the court's determination that the aforementioned change orders were outside the scope of the contract. Significantly, the court heard testimony from Mario DiRienzo, chief executive officer of DiRienzo, that those change orders were not DiRienzo's responsibility under the contract. We must defer to the court's assessment of the evidence before it. See *State* v. *Jones*, 113 Conn. App. 250, 261 n.6, 966 A.2d 277 ("[T]he determination of a witness' credibility is the special function of the trial court. [A reviewing] court cannot sift and weigh evidence." [Internal quotation marks omitted.]), cert. denied, 292 Conn. 901, 971 A.2d 40 (2009). Accordingly, the court's findings were not clearly erroneous.

## II

The defendants next claim that the court erred in finding that DiRienzo was due (1) $60,500 in retainage and (2) $68,228.80 for its change order concerning duct work and piping for the air conditioning system. We address each in turn.

We begin by setting forth our standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, supra, 120 Conn. App. 158.

## A

The defendants first argue that the court erred in finding that retainage was due as a separate component of damages over and above the contract balance. We agree.

The court found the following with regard to retainage. "Paragraph 22 of said contract calls for a retainage in payment to the subcontractor for work performed in the amount of 10 percent. The testimony reflected that Salce had retained 10 percent of the contract price agreed to for DiRienzo. Said retainage is 'normally released at the end of the contract.' . . . The evidence, however, has disclosed that the retainage in this case has not been released to the plaintiff to date. [General Statutes §] 42-158k provides that 'No construction contract may provide for any retainage in an amount that exceeds seven and one-half percent of the estimated amount of a progress payment for the [life of the] construction project.' Clearly, the 10 percent retainage in the instant contract violates this statute. This illegal retainage figure of 10 percent translates into a retainage of $60,500, which [Salce] has wrongfully withheld since November 7, 2005, the approximate date of completion of construction." (Citation omitted.)

On appeal, the defendants argue that the court erred in finding that retainage was due as a separate component of damages over and above the contract balance. Specifically, they allege that the court did not consider the 10 percent retainage to be part of the contract price. DiRienzo concedes that the court's decision was clearly erroneous in this regard. Accordingly, we reverse the court's award of $60,500 in retainage to DiRienzo.

B

The defendants also argue that the court erred in finding Salce responsible for $68,228.80 of the $122,567.82 that DiRienzo claimed it was due for its change order concerning duct work and piping for the air conditioning system. We disagree.

The court found the following facts, which are relevant to our discussion. "Exhibit W is a change order

concerning the relocation of the entire [air conditioning] system throughout the building. This change order, according to DiRienzo, was required because of [Salce's] refusal to perform steel [perforations] in the structural steel beams to accommodate a four inch PVC pipe for the venting of hot water heaters. Without the PVC pipe being able to penetrate the steel, insufficient space existed for the pipe above the ceiling along with the requisite duct work. . . . [D]ue to the minimal space for pipes and heat and air conditioning ducts, [perforations] were provided for and required to accommodate the flue vent pipes and PVC pipes along with ducts between the ceiling heights and beams. DiRienzo discovered that said [perforations] were never made in the beams by Salce or the structural steel contractor, requiring DiRienzo to change the duct size after the ducts had been ordered, received and partially installed. . . .

"The court finds that Salce either had actual notice of the need for perforations as a result of the request for same from DiRienzo or constructive notice as a result of the mechanical plans prepared by Innovative Engineering and bearing the name of John Cruet, Jr. Architect and Planner. The court finds it difficult to believe that the general contractor would not have knowledge of mechanical plans prepared by engineers and bearing the imprimatur of the project architect. Therefore, it is reasonable to charge the defendant with knowledge that the plans called for [perforations] of four inches and three inches in the beams in order to accommodate both pipes and ducts in the limited space between the ceiling and the beam." (Citation omitted; internal quotation marks omitted.)

The court also found credible the testimony of DiRienzo's duct work foreman, Richard Ferrucci. Ferrucci testified that the original order of duct work was for one floor only and that 75 percent of it was useable.

Ultimately, the court found that "the need for said work was occasioned by the lack of perforations in the structural steel and that the reasonable charge for the work represented in exhibit W [was] $53,639 together with 10 percent overhead and 10 percent profit totaling $727.80 plus 6 percent state tax of $3862 for a total of $68,228.80."

On appeal, the defendants argue that the court erred in finding Salce responsible for $68,228.60 of the $122,567.82 that DiRienzo claimed it was due for relocating the air conditioning system. Specifically, they contend that the weight of the evidence does not support the court's finding. More specifically, they assert that the court had before it evidence that the additional duct work and piping that DiRienzo performed was a result of its own design errors and that it was physically impossible for the vent piping in the end units to have been affected by a lack of perforations in the corridor beams. Again, we note that "it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Stein* v. *Tong*, 117 Conn. App. 19, 24, 979 A.2d 494 (2009). In the present case, Mario DiRienzo testified that his company had to replace all of the duct work because Salce had failed to perforate the beams, as DiRienzo had requested and expected. Mario DiRienzo also testified that without the perforations in the beams, all of the pipes had to be relocated because they did not fit. In addition to that testimony, the court also found credible the testimony of Ferrucci that the original order of duct work was for one floor only and that 75 percent of it was useable. We conclude that the court's finding was not clearly erroneous.

## III

The defendants finally claim that the court erred in certain findings relating to the installation of air conditioner units. Specifically, they contend that the weight of the evidence makes clear that the court erred in (1) finding Salce to be responsible for one half of the costs for problems resulting from the air conditioner units, (2) awarding DiRienzo $25,630.72 for the purchase of additional materials and labor to install those units and (3) failing to award Salce any of the $125,737, which it sought for costs it allegedly incurred due to DiRienzo's mistakes in the installation of those units. We disagree.

The following facts are relevant to our discussion. DiRienzo submitted a change order for the purchase of additional materials and labor concerning the installation of air conditioning units. Salce also sought to recover for repair costs resulting from the problems with the installation of the air conditioning units. The court found the following: "[The] plaintiff's exhibit AA is a change order concerning the air conditioner units to be installed on the exterior wall between the exterior and interior of the residential units. As these air conditioning units were to be installed on the balconies of the residential units, it was necessary to cut holes in the exterior of the building through which the air conditioners would protrude. The evidence is uncontroverted that . . . Salce's men cut the holes. . . . The evidence requires the court to conclude that these holes were too big for the units. . . . The court finds that installation of air conditioning units was part of DiRienzo's responsibility under the contract . . . . [T]he court . . . finds that both parties should share the responsibility for the problems that developed with these units. Salce is responsible for the size of the holes placed to accommodate these units. The fact that their holes were too large forced DiRienzo to deviate from original plans in order to install said units, and it is evident that water

problems resulted for the residents of these condominium units as a result of the original installation." (Citations omitted; internal quotation marks omitted.)

The defendants first claim that the weight of the evidence before the court was contrary to its finding that Salce was responsible for one half of the cost for the problems that developed with the air conditioning units. Specifically, they posit that the court erred in awarding Salce only half the amount it sought to recover to correct DiRienzo's errors in installing the air conditioner units. As we already have noted throughout this opinion, it is the exclusive province of the trial court to assess the evidence before it. *Desai* v. *Desai*, 119 Conn. App. 224, 236, 987 A.2d 362 (2010). As a reviewing court, we are unable to retry facts. See *Malmberg* v. *Lopez*, 208 Conn. 675, 679, 546 A.2d 264 (1988). Here, the court had before it evidence that DiRienzo was responsible for installing the air conditioning units under the contract. The court also had before it evidence that Salce improperly cut holes in the balconies causing DiRienzo to incur additional costs of both materials and labor to complete the installation. We, therefore, conclude that the court's finding that both parties should share responsibility for the problems that arose from the air conditioning units was not clearly erroneous.

Related to the defendants' claim is DiRienzo's concession that the court should have awarded Salce one half of its claimed cost to repair damaged Sheetrock, in light of its finding that both parties must share the cost for problems arising from the air conditioning units. Accordingly, the amount awarded to DiRienzo should be reduced by $1750.

The defendants next claim that the court erred in awarding DiRienzo $25,630.72 of the $39,352 that it sought for the purchase of additional materials and

labor for the installation of the air conditioner units. Again, there is sufficient evidence in the record to support the court's finding that DiRienzo be awarded $25,630.72. Specifically, exhibit AA is a change order DiRienzo submitted that details the additional costs for materials and labor it incurred through the installation of the air conditioning units. Furthermore, Mario DiRienzo testified as to these additional costs for materials and labor. The court's award was not clearly erroneous.

Finally, the defendants assert that the court erred in failing to award delay costs to Salce due to DiRienzo's mistakes in the installation of the air conditioner units. In determining that Salce should not be awarded delay costs, the court thoroughly examined the evidence before it. Specifically, the court examined the daily construction reports kept by Salce and noted that although the reports began on January 1, 2004, they first referred to an alleged delay caused by DiRienzo on November 22, 2004. The reports further noted the occurrence of delays before November 22, 2004, caused by other subcontractors. The court concluded: "A close examination by the court of [the daily construction reports], records of day by day construction work, fail to show that DiRienzo deserves to be singled out from a number of fellow subcontractors, all of whom may be responsible for minor slowdowns in the construction process. . . . [T]he evidence [also] discloses that there was a several week delay in starting construction, and it is common knowledge that a late start delays arrival at the finish line." One final time, we remind the defendants that as a reviewing court, we are unable to sift and weigh evidence. *IN Energy Solutions, Inc.* v. *Realgy, LLC*, 114 Conn. App. 262, 275, 969 A.2d 807 (2009).

The judgment is reversed only as to the award of damages and the case is remanded with direction to

reduce the judgment by \$62,250 and to render judgment in favor of the plaintiff accordingly. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.