IN ENERGY SOLUTIONS, INC. *v.* REALGY, LLC, ET AL.
(AC 29722)

Bishop, Robinson and Peters, Js.

Argued February 10—officially released May 12, 2009

*John T. Scully*, for the appellant-appellees (defendants).

*David M. Spinner*, for the appellee-appellant (plaintiff).

BISHOP, J. The defendant Realgy, LLC, doing business as Realgy Energy Services (Realgy), appeals from the judgment of the trial court awarding damages for breach of contract in favor of the plaintiff, IN Energy Solutions, Inc. (INES). On appeal, Realgy claims that the court improperly calculated the damages it awarded to INES. INES cross appeals, claiming that the court improperly (1) failed to include damages for lost profits in its breach of contract award and failed to rule on INES' request for certain other damages, (2) construed and applied the law regarding tortious interference with a business relationship, (3) found that it could not prevail on its claim alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., (4) rejected its defamation claim and (5) determined that the defendant Michael Vrtis, the managing director of Realgy, was acting in a corporate capacity and, therefore, could not be held personally liable for his actions. We reverse in part and affirm in part the judgment of the trial court.

The following facts are relevant to our consideration of the claims raised in the appeal and the cross appeal. On March 12, 2003, INES and Realgy entered into an energy sales broker agreement (agreement). The agreement required Realgy to supply natural gas to customers referred to it by INES and to pay commissions to INES for sales generated from those referrals. The agreement had an initial term of one year and, thereafter, remained in effect until terminated by either party. The agreement could be terminated for any reason by either party upon giving at least ninety days written notice. The agreement was subject to termination if either party was in default of any of its duties under the agreement or if either party filed for bankruptcy,

went into compulsory liquidation or made an assignment for the benefit of creditors. The agreement contained a provision prohibiting Realgy from soliciting any of INES' customers for eighteen months after termination of the agreement and subagents or related parties for twenty-four months after termination.

On March 3, 2005, Realgy sent INES a letter giving notice of its intent to terminate the agreement as of August 1, 2005. Thereafter, on July 20, 2005, Realgy sent another letter purporting to terminate the contract retroactively as of May 1, 2005, on the ground that INES had acted in a manner that constituted a material breach of the agreement in disclosing Realgy's confidential and proprietary information in violation of its sales policies.

Fritz Kreiss, the president of INES, testified that as of May 3, 2005, when he received the first cancellation notice, commissions were late, and he was informed by Vrtis that Realgy was out of the contract and would not pay commissions. Vrtis contacted INES' subagents and indicated that the contract with INES had concluded and asked them to contact him directly. Vrtis also asked subagents of INES to work for Realgy.

INES filed a five count complaint alleging breach of contract, interference with INES' business relationships, violation of CUTPA, unjust enrichment and defamation and disparagement. In response, Realgy filed special defenses claiming that INES' complaint failed to state a cause of action, that INES materially breached the agreement, that the terms of the agreement were ambiguous and, as such, should be construed against INES and that INES breached its duty of good faith and fair dealing.[1]

On January 24, 2008, following a court trial, the court issued a memorandum of decision rendering judgment

[1] Realgy and Vrtis also filed separate counterclaims that they did not pursue at trial and are not a subject of this appeal.

in favor of INES on its breach of contract count only, finding that INES had failed to meet its burden of proof regarding its claims of tortious interference, CUTPA and defamation and disparagement. The court also found that Realgy had failed to prove that INES breached the agreement. The court concluded that although Realgy's conduct "was not wrongful or tortious [so as to] allow damages for interference with business relationships, defamation and disparagement or under CUTPA, [Realgy] is not relieved from paying commissions pursuant to the contract."[2] The court awarded damages in the amount of $218,994.09, consisting of $122,955.24 for pretermination commissions and $96,038.85 for posttermination commissions. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

I

APPEAL

On appeal, Realgy claims that the damages awarded for pretermination commissions and posttermination commissions were not supported by the evidence. Section ten of the agreement specifically addresses the payment of commissions upon termination, providing: "On termination, [b]roker[3] will be paid commission as and when set forth in [s]ection 3; (1) if the [a]greement was terminated for a reason set forth in section 8,[4] on sales of [e]nergy [s]ervices to [c]ustomers prior to [t]ermination [d]ate or, (2) if the [a]greement was terminated for a reason other than one or more of the reasons set forth in [s]ection 8, on sales of [e]nergy [s]ervices

[2] As to INES' claim for unjust enrichment, the court stated that "the damages for this cause of action will be determined under the breach of contract claim in the first count." This ruling has not been challenged on appeal.

[3] The term "[b]roker" in the agreement refers to INES.

[4] Section eight sets forth the confidentiality and ethical expectations of the parties.

to [b]roker's [c]ustomers for the remaining term of the [n]ew [c]ontract." Section three provides, inter alia, that commissions "will be paid to [b]roker within 10 days following the [c]ompany's[5] receipt of payment for the [e]nergy [s]ervices sold to [b]roker's [c]ustomers."

It is incumbent on the party asserting damages to provide sufficient evidence to prove such damages. See *Frillici* v. *Westport*, 264 Conn. 266, 283, 823 A.2d 1172 (2003). Further, "[w]hen damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 646, 904 A.2d 149 (2006). "[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 418–19, 948 A.2d 1009 (2008). "When, however, a damages award is challenged on the basis of a question of law, our review [of that question] is plenary." (Internal quotation marks omitted.) *Robert* v. *Scarlata*, 96 Conn. App. 19, 22, 899 A.2d 666 (2006). With these principles in mind, we address Realgy's claims in turn.

A

Realgy first claims that the court improperly calculated the pretermination commissions to which INES was entitled pursuant to the agreement. Realgy contends that because the agreement provided that the commissions did not become due until ten days after Realgy received payment for its energy services, the court improperly included the figures for June and July,

[5] The "[c]ompany" refers to Realgy.

2005, in the pretermination award because they would not become due until August or September, 2005. We disagree.

The termination provision of the agreement has two components: the sales on which INES is entitled to a commission, and a time line stating when payment is due from Realgy. The question of when payment of those commissions is due would be relevant only if Realgy had not gotten paid for those sales. There is no contest that Realgy was ultimately paid for those contracts. Because the agreement may be interpreted as providing that entitlement to a commission arises on the date the sale is made, even if payment may be deferred until after Realgy receives payment, the court properly included the figures for June and July in its calculation of pretermination damages.

B

Realgy also claims that there was no evidence from which the court could have calculated the posttermination commissions. Specifically, Realgy asserts that the court's award of posttermination commissions was based on a document that was not in evidence. We agree.

The agreement provided that, after termination, INES was entitled to commissions on energy sales during the remaining term of new contracts and was not entitled to receive commissions on sales made pursuant to renewal contracts. INES did not offer into evidence any of the contracts for which it was seeking commissions, nor did it offer evidence regarding the number of new contracts that were in existence at the time of termination or the remaining terms or end dates of those contracts.

Following the close of evidence and the submission of posttrial briefs, the court held a status conference at which it stated that it had found that "the briefs

were inadequate for the court to determine the issue of damages." Consequently, the court ordered the parties to file simultaneous supplemental briefs regarding commissions and requested that the parties specifically identify pretermination and posttermination commissions. The brief filed by INES contained two documents that had not been introduced into evidence at trial. The documents identified claimed contract end dates and specifically set forth the claimed amount of $96,038.85 as the amount that INES claimed for posttermination commissions.

In its memorandum of decision, the court stated that it based its award on exhibit eight, which is a spreadsheet prepared by INES to illustrate the losses it suffered as a result of Realgy's actions. Although the court stated that "[t]he calculations made by [INES] by the extrapolation of data from [INES'] exhibit eight has established damages with reasonable certainty," exhibit eight does not distinguish between new and renewal contracts. Thus, it is impossible to know the amount of posttermination commissions to which INES is entitled on the basis of exhibit eight or any of the other evidence offered at trial. To order the posttermination damages that it awarded, the court had to have relied on the supplemental filings of INES, which were not introduced into evidence and, therefore, not subject to cross-examination or rebuttal by Realgy. Because the court relied on a document that was not in evidence, and there is no evidence in the record to support the court's award of posttermination commissions, the award for those commissions in the amount of $96,038.85 is clearly erroneous.

## II

### CROSS APPEAL

#### A

INES first claims on its cross appeal that the court improperly failed to award damages for lost profits as

a component of the damages for breach of contract.[6] INES also claims that the court failed to rule on its claims regarding fixed rate contract discrepancies and nonpayment of commissions due on conversion of guaranteed savings contracts to fixed rate contracts. We decline to review these claims.

At trial, INES claimed damages in the amount of $1,369,808.86, including damages for, inter alia, lost profits, a fixed rate contract commission discrepancy in the amount of $60,000 and the failure to pay commissions due on the conversion of guaranteed savings accounts to fixed rate accounts in the amount of $188,550. Although the court acknowledged in its memorandum of decision that INES claimed this amount of total damages, it did not address INES' claims for damages for lost profits, fixed rate contract commission discrepancies or commission conversions of guaranteed savings contracts. INES filed a motion to reargue in which it sought, inter alia, an articulation or clarification of the court's rulings on its claims for the fixed rate discrepancies and the guaranteed savings contracts. The court denied that motion, and INES did not seek review of the denial of its motion. INES never sought an articulation as to the court's decision regarding lost profits.

Although "[o]ur rules of practice require that the trial court state its decision on each issue in the case and

---

[6] Realgy contended that its posttermination communications with INES' customers and subagents were based upon its belief that INES breached the agreement, thereby voiding the nonsolicitation provision. Although the court found that INES did not breach the agreement and was, therefore, "entitled to the benefit of [the] full performance of the agreement," the court, as noted, found that Realgy breached the agreement only in failing to pay commissions, not in violating the nonsolicitation provision. INES does not claim on appeal that the court should have found a breach of contract on the basis of a violation of the nonsolicitation provision or that breach of contract damages should have been awarded on that ground.

its conclusion as to each issue in the case and its conclusions as to each claim of law raised by the parties . . . [i]t remains the appellant's responsibility to furnish an adequate appellate record. . . . Thus, the failure of a litigant to file a motion for articulation upon a court's failure to rule upon a claim vitiates appellate review of their claim." (Citation omitted; internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 137, 946 A.2d 230 (2008). Further, "[w]e have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court . . . ." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 87, 924 A.2d 886 (2007).

Here, although the court failed to rule on INES' requests for certain damages, INES failed to file a motion for articulation asking the court to address these claims or to seek review of the denial of its requested articulation. Accordingly, we decline to review these claims.

## B

INES next claims that the court applied the wrong legal standard to its claim of tortious interference with business relationships. We agree.

In support of its claim for interference with business relationships, INES cited language in the agreement that prohibited Realgy from soliciting INES' customers and, at trial, provided evidence to the court purporting to show that Realgy did solicit its customers. Realgy claimed that in communicating with INES' customers following the termination of its agreement with INES, it was merely trying to maintain a contractual relationship with customers with whom it already had an existing contract and that the nature of their communications was merely explanatory or informational. The court

found that INES had not proven that Realgy acted wrongfully and, therefore, rejected INES' claim for interference with business relationships.

"A successful action for tortious interference with business expectancies requires the satisfaction of three elements: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss. . . .

"Our case law has recognized that not every act that disturbs a business expectancy is actionable. [A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. . . . Accordingly, the plaintiff must plead and prove at least some improper motive or improper means. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that . . . the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . In the context of a tortious interference claim, the term malice is meant not in the sense of ill will, but intentional interference without justification. . . . In other words, the [plaintiff] bears the burden of alleging and proving lack of justification on the part of the [defendant]." (Citations omitted; internal quotation marks omitted.) *American Diamond Exchange, Inc.* v. *Alpert,* 101 Conn. App. 83, 90–91, 920 A.2d 357, cert. denied, 284 Conn. 901, 931 A.2d 261 (2007).

Although the court properly set forth the cited law as the applicable legal standard for a claim of interference with a business relationship, the court then stated: "To prevail on a claim of interference with business contracts and relationships, [INES] must prove that [Realgy's] conduct was tortious, namely, that the interference

was by some improper motive or improper means. *Also*, [INES] must show that [Realgy] was guilty of fraud, misrepresentation or intimidation." (Emphasis added.) In restating the law, the court improperly set forth the requirements of *both* improper motive or means *and* fraud, misrepresentation or intimidation. In doing so, the court placed a burden on INES that is not required by law. Because the court did not apply the correct law to INES' claim for interference with business relationships, INES is entitled to a new trial on that count of its complaint.

## C

INES next claims that the court improperly found that it could not prevail on its claim alleging a violation of CUTPA. We disagree.

"[General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 18–19, 938 A.2d 576 (2008). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets

one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 43, 717 A.2d 77 (1998).

"It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Chamlink Corp.* v. *Merritt Extruder Corp.*, 96 Conn. App. 183, 189, 899 A.2d 90 (2006).

In regard to INES' CUTPA claim, the court stated: "While [INES] may have established a claim for breach of contract by showing that [Realgy] did not pay commissions due, a simple breach of contract does not amount to a violation of CUTPA in the absence of substantial aggravating circumstances. The court finds that the evidence does [not] establish substantial aggravating circumstances. Further, [INES] has not sustained its burden of proof that [Realgy's] conduct was unethical or unscrupulous or that its conduct was wilful or reckless. Accordingly, the court denies [INES'] claim of a violation of CUTPA."[7]

On appeal, INES claims that the court improperly determined that Realgy's conduct in failing to pay commissions and soliciting its customers and subagents did not amount to a CUTPA violation. First, the court did

[7] Although the court's memorandum of decision states that "the evidence does establish substantial aggravating circumstances," the parties agree, on the basis of the entirety of the decision, that the court meant to say that the evidence does *not* establish substantial aggravating circumstances.

not make any findings regarding Realgy's purported solicitation attempts as they related to the CUTPA claim, and, in making these arguments, INES invites us to weigh the evidence in this case. An appellate court, however, "cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Nash*, 278 Conn. 620, 641, 899 A.2d 1 (2006). "It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Santos*, 108 Conn. App. 250, 253, 947 A.2d 414 (2008).

Here, the court specifically found that INES did not prove that Realgy's conduct in failing to pay commissions was unethical, unscrupulous, wilful or reckless. Because weighing evidence is beyond the scope of our review, and we do not retry the facts or pass on the credibility of witnesses, we cannot conclude that the court's finding that INES failed to prove a violation of CUTPA was clearly erroneous.

### D

INES next claims that the court improperly rejected its defamation claim. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 838, 925 A.2d 1030 (2007).

INES claims that Realgy engaged in a "campaign of communications with all [of INES' customers] which state that [INES] and its agents are only 'sales people' and are not 'dedicated energy professionals, that [Realgy's] representatives provide fair and professional service (directly implying that INES brokers do not), referring to INES brokers as 'middlemen' providing 'self-serving advice and guidance' and stating that Realgy monitors the actions of INES subbrokers and this is consistent with terminating this broker for cause, can only be understood as an imputation by [Realgy] of conduct on the part of [INES] and its agents incompatible with the proper conduct of [INES] and its subagents as energy brokers working in the best interests of their customers."

In its decision, the court stated: "As to [INES'] claims for defamation and disparagement . . . based on [Realgy's] explanation for its conduct, the court finds that the facts do not show that [Realgy] acted within the requirements to establish the cause of action of defamation and disparagement. . . . [INES] has failed to establish that the communications sent by [Realgy] were defamatory in nature." The court did not set forth the law on which it relied in coming to this conclusion, nor did the court set forth the specific explanation offered by Realgy on which it relied in denying INES' defamation claim. In analyzing INES' tortious interference claim, the court referred to Realgy's defense of its communications as "explanatory or informational" and that "the purpose of the communication was to inform the customers of the adverse impact of selling storage, switching marketers and to make sure that Realgy was not to be blamed for such impact." Although we can infer that this is the rationale that the court relied on in its rejection of INES' defamation claim, we cannot be sure. "We have noted in the past that the wholesale adoption by the Superior Court of a party's

reasoning in its legal memoranda as the basis for the court's own decision is not a sound practice because it does not afford an appellate court a clear understanding of the reasons underlying the trial court's decision." *Wendover Financial Services Corp.* v. *Connelly*, 61 Conn. App. 244, 247, 763 A.2d 670 (2000). Further, the court's decision is also devoid of any discussion of whether the allegedly defamatory communications identified INES to a reasonable third person, whether they were published to a third person, or whether INES' reputation suffered injury as a result of the allegedly defamatory statements.

INES filed a motion to reargue in which, rather than reargument, it appeared to request certain articulations. It sought to reargue the issue of defamation but did not actually seek articulation of the court's ruling on its defamation claim. Even if the motion to reargue could be construed as a motion for articulation, however, that motion was denied, and INES did not seek review of the denial of that motion. "Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 731–32, 941 A.2d 309 (2008). Because the record does not adequately reveal the grounds for the court's rejection of the defamation claim, we are unable to review it on appeal.[8]

E

INES finally claims that the court improperly determined that Vrtis was acting in a corporate capacity and,

[8] Even if we were to proceed to determine whether Realgy's communications were defamatory, we note that the communications specified by INES do not actually identify INES by name. In fact, most of the alleged defamation is, in INES' own words, "implied." This court has rejected claims of "defamation by innuendo." See *Mercer* v. *Cosley*, 110 Conn. App. 283, 305, 955 A.2d 550 (2008).

therefore, could not be held personally liable for his actions. In this regard, the court stated: "During the trial, [INES'] counsel made a reference to the fact that . . . Vrtis may have acted individually. However, this issue was not pursued in the trial brief. Nevertheless, the court finds [that] such a reference has no merit in that the evidence shows that . . . Vrtis was acting in a corporate capacity." On appeal, INES does not dispute that it did not raise this claim in its trial brief. Rather, INES claims that "it is clear that most of the actions constituting the interference with [its] business were undertaken either directly by . . . Vrtis or at [his] direction . . . ." In its argument, however, INES does not refer to the evidence in the record that supports its claim that Vrtis should be held personally liable. An appellate brief is required to contain appropriate references to the page or pages of the transcripts or to the relevant documents that support the claims on appeal. See Practice Book § 67-4 (d). The mere recital of claims, supposedly supported by the evidence, without directing the court's attention to those specific portions claimed to be relevant and material, does not adequately place those claims before the court for its consideration. See *Drabik* v. *East Lyme*, 234 Conn. 390, 397–99, 662 A.2d 118 (1995); *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 480, 946 A.2d 239, cert. denied, 289 Conn. 902, 957 A.2d 873 (2008).

The judgment is reversed as to the amount of damages awarded for posttermination commissions and that award in the amount of $96,038.85 is vacated. The judgment is reversed as to the count of tortious interference and the case is remanded for further proceedings on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.